The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document was signed electronically at the time and date indicated, which may be materially different from its entry on the record.



**Russ Kendig**
**United States Bankruptcy Judge**

**Dated: 10:07 PM November 14, 2020**

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | : | CHAPTER 13 |
| | : | |
| DAVID MARK SPENCER, | : | CASE NO. 20-60203 |
| YLVA SOFI ROGLER, | : | |
| | : | JUDGE RUSS KENDIG |
| Debtors. | : | |
| | : | **MEMORANDUM OF OPINION** |
| | : | **(NOT FOR PUBLICATION)** |
| | : | |

     This matter is before the court to consider Debtors' eligibility under 11 U.S.C. § 109(e). The eligibility issue was raised in Mark Porter's ("Creditor") objection to confirmation, Debtors' objection to Creditor's proof of claim, and the chapter 13 trustee's ("Trustee") motion to dismiss. The court held a hearing on Debtors' objection on August 5, 2020, after which a briefing schedule was issued. The matter is now ready for ruling.

     The court has subject matter jurisdiction of this case under 28 U.S.C. § 1334 and the general order of reference issued by the United States District Court for the Northern District of Ohio. Gen. Ord. No. 2012-07 (N.D. Ohio April 4, 2012). This matter is a core proceeding and the court has statutory authority to enter final orders and judgments. 28 U.S.C. § 157(b)(2)(A), (B), (O). And because the matter "stems from the bankruptcy itself," the court also has constitutional authority to enter final orders and judgments. Stern v. Marshall, 564 U.S. 462, 499 (2011). Pursuant to 28 U.S.C. §§ 1408 and 1409, venue in this court is proper. This opinion

constitutes the court's findings of fact and conclusions of law in accordance with Rule 7052 of the Federal Rules of Bankruptcy Procedure.[1]

This opinion is not intended for publication or citation. The availability of this opinion, in electronic or printed form, is not the result of a direct submission by the court.

## **BACKGROUND**

This eligibility dispute arises from a prepetition business purchase agreement (the "Agreement") between Creditor, Debtor-Spencer, and Brian Keller ("Keller").

### A. The Agreement

On February 20, 2019, the parties executed the Agreement, under which Debtor-Spencer and Keller agreed to purchase In-Transit Trailer, LLC (the "Business") from Creditor. The provision of the Agreement labeled "Consideration" states:

> As total consideration for the purchase and sale of the Business (including its tangible and intangible assets as described above), and Buyer's assumption of the assumed obligations and all other liabilities provided for in this Agreement, the Buyer shall pay to the Seller the sum of $350,000.00, and such total consideration to be referred to in this Agreement as the 'Purchase Price.'

(Claim No. 2-1 pt. 2, at 2.) Creditor is identified as "Seller" and Debtor-Spencer and Keller are identified as "Buyer" in the Agreement. (Id. at 1.)

The Agreement also contains an indemnification clause, which provides in relevant part that: "Buyer shall indemnify and hold Seller harmless from any and all liabilities and obligations arising from Buyer's operation of the Business after the Closing." (Id. at 5.) The Agreement is signed by Creditor, Debtor-Spencer, and Keller. (Id. at 8-10.) The closing date was February 20, 2019. (Id. at 2.)

### B. The State Court Case

On December 18, 2019, Creditor filed a lawsuit in the Stark County Court of Common Pleas (the "State Court"), seeking $746,123.70 against Debtor-Spencer and Keller jointly and severally for damages arising from the Agreement. Creditor raises numerous claims in the State Court case, including breach of contract, unjust enrichment, fraud/misrepresentation, and indemnification. Relevant to this case are Creditor's breach of contract claims. First, Creditor alleges that Debtor-Spencer and Keller breached the Agreement by failing to pay Creditor the $350,000.00 purchase price, and Creditor seeks damages in this amount. (Ex. A. to Creditor's Am. Obj. to Conf., ECF No. 74-1, at 2-3.) Second, Creditor alleges that after the Agreement was

---
[1] Hereinafter, unless otherwise indicated, any reference to a section ("§") refers to a section in Title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code"), and any reference to a "Rule" refers to a Federal Rule of Bankruptcy Procedure.

2

made, Debtor-Spencer and Keller, while operating the Business, incurred outstanding accounts with third parties as follows:

| | |
|---|---|
| AAA Freight, Inc. | $295,981.70 |
| DDH Trucking, LLC | $68,869.00 |
| Trimble Corp. | $11,880.04 |
| JF Young Trucking | $9,270.00 |
| Central Mutual | $8,045.76 |
| People Net | $1,097.20 |
| Provt Inc. | $980.00 |

(Id. at 3, 4.) Creditor alleges that the third parties have sought payment from him on these accounts, and Debtor-Spencer and Keller have breached the Agreement by failing to indemnify him. (Id. at 4.) Creditor seeks damages in the total amount of these accounts, $396,123.70. (Id.)

### C. The Bankruptcy Case

On January 31, 2020, Debtors filed a joint petition for relief under chapter 13 of the Bankruptcy Code. On Schedule F, Debtors listed noncontingent, liquidated, and unsecured claims in the total amount of $139,751.46. Creditor is identified on Schedule F as holding a contingent, unliquidated, disputed, and unsecured claim in an unspecified dollar amount. Creditor's claim is described as "potential liability arising out of corporate contract." (ECF No. 1, at p. 33.)

Creditor filed a wholly unsecured proof of claim (the "Claim") in the amount of $746,123.70 on February 25, 2020. The Claim is based on the Agreement. Creditor breaks his Claim down as follows: (1) $350,00.00 for failure to pay the purchase price; and (2) $396,123.70 for failure to indemnify pursuant to the Agreement. (ECF No. 83, at 2.) Although Creditor has raised fraud claims in the State Court case, Creditor contends that his $746,123.70 Claim falls under an obligation to pay this amount pursuant to the Agreement. (Id.)

Debtors objected to the Claim on June 12, 2020, disputing the enforceability of the Agreement. Debtors argue that since the Claim is contingent and unliquidated, it is not an allowed claim for distribution purposes. They also contend that they would have answered Creditor's complaint and disputed Creditor's allegations if the State Court case had not been stayed.

Creditor filed an amended objection to confirmation on May 6, 2020, alleging, among other things, that Debtors' unsecured debts exceed the debt limit imposed by § 109(e). Debtors responded to the objection on May 12, 2020, arguing that Creditor's Claim was properly scheduled as contingent and unliquidated because the subject of the Claim was pending in the State Court case on the petition date. On July 23, 2020, Trustee filed a motion to dismiss, arguing that Debtors exceed the unsecured debt limit in § 109(e) and are therefore ineligible for relief under chapter 13 of the Bankruptcy Code.

## DISCUSSION

Section 109(e) of the Bankruptcy Code provides in relevant part:

> Only an individual with regular income that owes, on the date of the filing of the petition, noncontingent, liquidated, unsecured debts of less than $419,275 and noncontingent, liquidated, secured debts of less than $1,257,850 . . . may be a debtor under chapter 13 of this title.

§ 109(e). The purpose of § 109(e) is "[t]o ensure that only relatively small debtors invoke the protections of Chapter 13[.]" Glance v. Carroll (In re Glance), 487 F.3d 317, 319-20 (6th Cir. 2007); Comprehensive Accounting Corp. v. Pearson (In re Pearson), 773 F.2d 751, 753 (6th Cir. 1985) ("Congress desired to give small sole proprietors the benefit of Chapter 13, but also established dollar limits to prevent larger businesses from taking advantage of the provisions.").

"Chapter 13 eligibility should normally be determined by the debtor's schedules checking only to see if the schedules were made in good faith." Pearson, 773 F.2d at 757. However, even if filed in good faith, a debtor's schedules are not dispositive:

> (1) the schedules are unquestionably the starting point of the eligibility inquiry, but may also be the ending point under certain circumstances; (2) the word 'normally' used with respect to reliance on schedules implies exceptions for the proper application of a court's discretion so long as the determination focuses on determining debts 'on the date of filing,'; and (3) given the need for parties in interest to know § 109(e) eligibility early in a case, the eligibility determination should not depend on the claims allowance process (based on the Sixth Circuit's quoting with approval a case that states that the court considers debts as they exist at the time of filing, 'not after a hearing') and turn into separate satellite litigation that dominates and delays the Chapter 13 proceedings . . . [A] court must make an independent determination apart from Debtor's schedules whether debts are contingent and unliquidated.

In re Perkins, No. 08-33352, 2009 Bankr. LEXIS 2885, at *4-5 (Bankr. N.D. Ohio Sept. 14, 2009) (citations omitted); In re Bosserman, 587 B.R. 668, 674 (Bankr. N.D. Ohio 2018); In re Smith, 365 B.R. 770, 780-81 (Bankr. S.D. Ohio 2007). The party challenging a debtor's eligibility under § 109(e) has the initial burden of going forward with the evidence. Smith, 365 B.R. at 780 (citing In re Pike, 258 B.R. 876, 882 (Bankr. S.D. Ohio 2001)). The court may dismiss or convert a debtor's case if the debtor fails to meet § 109(e)'s eligibility requirements. Smith, 365 B.R. at 780 (citing In re White, 216 B.R. 232, 234 (Bankr. S.D. Ohio 1997)).

In this case, there is no dispute that Debtors' secured debt is within § 109(e)'s limits. The issue is whether Debtors' noncontingent, liquidated, unsecured debts are less than $419,275. On

4

Schedule F, Debtors listed noncontingent, liquidated, and unsecured claims in the total amount of $139,751.46. Creditor is listed as holding a contingent, unliquidated, disputed, and unsecured claim in an unspecified dollar amount. However, Creditor argues that he held a noncontingent, liquidated, unsecured claim in the amount of $746,123.70 as of the petition date. Thus, Creditor argues that Debtors exceed the unsecured debt limit in § 109(e), and Trustee seeks to dismiss Debtors' case on this basis.

### A. Creditor Has an Unsecured Claim for Eligibility Purposes

Debtors dispute the validity and enforceability of the Agreement underlying Creditor's Claim, arguing that Creditor failed to perform under the Agreement's terms. Debtors also argue that there was no transfer of assets or consideration in support of the Agreement. Because of this, Debtors argue that Creditor's Claim is not valid and should not be included for eligibility purposes. The court disagrees.

The term "debt" is defined under the Bankruptcy Code as "liability on a claim." § 101(12). A "claim" is defined in relevant part as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." § 101(5)(A). "The terms debt and claim are coextensive: a creditor has a claim against the debtor; the debtor owes a debt to the creditor." Southmark Corp. v. Schulte Roth & Zabel (In re Southmark Corp.), 88 F.3d 311, 317 (5th Cir. 1996) (internal quotation marks and citation omitted). "Section 109(e) excludes unliquidated and contingent debts from the eligibility calculation, but it does not exclude debts which are merely disputed." Fountain v. Deutsche Bank Nat'l Trust Co. (In re Fountain), 612 B.R. 743, 748 (B.A.P. 9th Cir. 2020) (citing Nicholes v. Johnny Appleseed (In re Nicholes), 184 B.R. 82, 88 (B.A.P. 9th Cir. 1995)).

Here, the validity and enforceability of the Agreement have not yet been determined in the State Court case. However, Creditor's alleged right to payment is evidenced by the Agreement itself, which was attached to the Claim. According to the Agreement, Debtor-Spencer and Keller agreed to purchase the Business from Creditor for $350,000.00. The Agreement also contains an indemnification provision, which states that Debtor-Spencer and Keller shall indemnify and hold Creditor harmless from any and all obligations arising from their operation of the Business after the closing date. Debtors acknowledged Creditor's Claim by listing it in their schedules. The mere fact that they dispute the debt is not a sufficient basis to exclude it for purposes of § 109(e). Fountain, 612 B.R. at 748 (citing Nicholes, 184 B.R. at 88). Thus, Creditor has an unsecured claim for eligibility purposes.

### B. The Claim is Partially Contingent and Partially Noncontingent

Next, the court must determine whether the debt is contingent. "[C]ase law uniformly holds that 'a debt is contingent if it does not become an obligation until the occurrence of a future event, but is noncontingent when all of the events giving rise to liability for the debt occurred prior to the debtor's filing for bankruptcy.'" Smith, 365 B.R. at 781 (quoting Mazzeo v. United States (In re Mazzeo), 131 F.3d 295, 303 (2d Cir. 1997)). "A claim is contingent as to liability if the debtor's legal duty to pay does not come into existence until triggered by the

occurrence of a future event. A creditor's claim is not contingent when the 'triggering event' occurred prior to the filing of the chapter 13 petition." Mazzeo, 131 F.3d at 303 (citation and alterations omitted).

In the instant case, the $350,000.00 portion of the Claim is noncontingent because the triggering event, *i.e.* Debtor-Spencer's and Keller's obligation to pay the purchase price, arose prior to the petition date when the Agreement was executed. However, as explained below, the remaining $396,123.70 portion of the Claim based on indemnity is contingent. The Supreme Court of Ohio has stated:

> Indemnity arises from contract, either express or implied, and is the right of a person, who has been compelled to pay what another should have paid, to require complete reimbursement. In general, to indemnify is to make whole and has been defined to mean to save harmless by giving security for the reimbursement of a person in case of anticipated loss, as by execution and delivery of a bond.
>
> The nature of an indemnity relationship is determined by the intent of the parties as expressed by the language used. All words used must be taken in their ordinary and popular sense, and when a writing is worded in clear and precise terms; when its meaning is evident, and tends to no absurd conclusion, there can be no reason for refusing to admit the meaning which it naturally presents.

Worth v. Aetna Cas. & Sur. Co., 513 N.E.2d 253, 256 (Ohio 1987) (citations, quotation marks, and alterations omitted).

Here, the relevant portion of the Agreement's indemnity provision states: "Buyer shall indemnify and hold Seller harmless from any and all liabilities and obligations arising from Buyer's operation of the Business after the Closing." (Claim No. 2-1 pt. 2, at 5.) Creditor alleges that third parties have sought payment and made claims against him for the outstanding accounts. But there is no indication that Creditor has been compelled to pay the third parties for the outstanding accounts, nor is there any indication that Debtor-Spencer and Keller had a contractual duty to defend Creditor.[2] Accordingly, the $396,123.70 portion of the Claim based on indemnity is contingent. Cf. e.g., Rayco Mfg. v. Beard Equip. Co., No. 11-CA-0057, 2014 Ohio App. LEXIS 885, at *15-25 (Ohio Ct. App. 2014) (holding that: (1) indemnity claim was not yet ripe when liability of indemnitee had not yet been determined in pending case; and (2) plain language of agreement did not impose an express duty on indemnitor to defend).

---

[2] The duty to indemnify is separate and distinct from the duty to defend. See Allen v. Fifth Third Bank, No. L-13-1143, 2014 Ohio App. LEXIS 1280, at *9 (Ohio Ct. App. 2014) ("Where an indemnity agreement includes a duty to defend, that duty is broader than and distinct from the duty to indemnify . . . ."). Even assuming the Agreement imposed upon Debtor-Spencer and Keller an obligation to defend Creditor, there is no indication that Creditor has incurred costs and expenses in defense of the claims from the third parties. See, e.g., In re Fuel Baron's, Inc., 488 B.R. 783, 789 (Bankr. N.D. Ga. 2013) (holding that a creditor's indemnity claim for defense costs *already incurred* was noncontingent for purposes of § 502(e)(1)(B) because no future event was needed to trigger a legal duty to pay the claim).

6

20-60203-rk    Doc 155    FILED 11/14/20    ENTERED 11/16/20 08:35:11    Page 6 of 9

Therefore, Creditor's Claim is contingent in the amount of $396,123.70 and noncontingent in the amount of $350,000.00.

Debtors argue that the entire Claim is contingent because liability has not yet been established in the State Court case. However, a debt does not qualify as contingent merely because the debtor disputes liability or has counterclaims or defenses to the underlying claim. See, e.g., In re Clark, 91 B.R. 570, 575 (Bankr. D. Colo. 1988) (explaining that a debt is not contingent just because it is subject to offset or counterclaim); In re Crescenzi, 69 B.R. 64, 65 (S.D.N.Y. 1986) ("merely because a debtor disputes a debt, or has potential defenses or counterclaims that might reduce the creditors' actual collection, the debt is not thereby rendered 'contingent' or 'unliquidated.'"); Fountain, 612 B.R. at 749 ("A dispute over liability for a claim does not make the debt contingent."). Nor is a debt contingent simply because it has not been reduced to judgment. In re Martz, 293 B.R. 409, 411 (Bankr. N.D. Ohio 2002) (citing In re Dill, 30 B.R. 546, 549 (B.A.P. 9th Cir. 1983), aff'd, 731 F.2d 629 (9th Cir. 1984)). Debtor-Spencer will have his chance to dispute liability in the State Court case. But for now, the only issue is the nature of Creditor's Claim for eligibility purposes under § 109(e). For the reasons already stated, Creditor's Claim is contingent in the amount of $396,123.70 and noncontingent in the amount of $350,000.00.

### C. The Noncontingent Portion of the Claim is Liquidated

The court must now determine whether the noncontingent portion of the Claim is liquidated. In Pearson, the Sixth Circuit explained:

> The concept of liquidation has been variously expressed. The common thread throughout the cases, however, has been ready determination and precision in computation of the amount due. A liquidated debt is one that can be determined by mathematical computation. Some cases have stated the test as whether the amount due is capable of ascertainment by reference to an agreement or by simple computation.

Pearson, 773 F.2d at 754 (quotation marks, citation, and alterations omitted). "Since Pearson, courts applying § 109(e)'s eligibility standard have uniformly held that ready determinability is the touchstone for distinguishing between liquidated and unliquidated debts." Smith, 365 B.R. at 782 (collecting cases).

The facts here show that the noncontingent portion of the Claim is liquidated. The Agreement, which was executed before the petition date, provided that Debtor-Spencer and Keller would purchase the Business from Creditor for $350,000.00. Creditor alleges that Debtor-Spencer and Keller failed to pay the purchase price in accordance with the Agreement. Debtors dispute liability and the validity of the Agreement. But a debt is not unliquidated simply because it is disputed. Nicholes, 184 B.R. at 91; Crescenzi, 69 B.R. at 65. Therefore, the noncontingent portion of the Claim is liquidated.

### D. Debtor-Spencer Exceeds § 109(e)'s Unsecured Debt Limit

Having determined that Creditor has a $350,000.00 noncontingent, liquidated, and unsecured claim, the issue now is whether this causes Debtors to be ineligible under § 109(e). Debtors would clearly exceed the unsecured debt limit in § 109(e) if the $350,000.000 debt owed to Creditor is added to the $139,751.46 of noncontingent, liquidated, and unsecured debts Debtors listed on Schedule F. However:

> It would be inconsistent with the plain meaning of the language of Sections 302(a), 302(b), and 109(e) to treat joint filers as a consolidated entity, whose debts taken together may not exceed the Section 109(e) ceilings, rather than two separate individuals who must separately each qualify as a debtor pursuant to Section 109(e). It would also be inconsistent with the exemption of assets to treat joint filers as a consolidated entity rather than separate individuals. Each debtor in a joint case may claim exemptions separately.

In re Scholz, No. 10-08446, 2011 Bankr. LEXIS 2971, at *5 (Bankr. M.D. Fla. April 11, 2011) (citation omitted) (denying trustee's motion to dismiss and holding that chapter 13 debtors in joint case each separately met debt eligibility requirements in § 109(e)); see also In re Werts, 410 B.R. 677, 689, 696 (Bankr. D. Kan. 2009) (holding that chapter 7 debtors were not precluded from converting to chapter 13 because each debtor had debts falling below the unsecured debt limit). Therefore, "[i]f married debtors are each eligible to file individual Chapter 13 petitions, they may file a joint Chapter 13 petition notwithstanding a combined debt total which exceeds § 109(e) limits." In re Hannon, 455 B.R. 814, 816 (Bankr. S.D. Fla. 2011). Relatedly, the ineligibility of one debtor in a joint chapter 13 case does not compel the dismissal of the other debtor who is otherwise eligible. See, e.g., In re Tabor, 232 B.R. 85, 90-92 (Bankr. N.D. Ohio 1999) (dismissing debtor-husband who exceeded § 109(e)'s debt limit in joint chapter 13 case but allowing debtor-wife to proceed with case).

In this case, Schedule F indicates that Debtor-Spencer incurred total debts in the amount of $60,683.76, Debtor-Rogler incurred total debts in the amount of $55,434.58, and both Debtors incurred debts in the total amount of $23,633.12. Clearly, the debt owed to Creditor pursuant to the Agreement was a debt incurred *only* by Debtor-Spencer and Keller; Debtor-Rogler's name and signature do not even appear on the Agreement, and Creditor does not argue otherwise. Thus, after adding the debt owed by Debtor-Spencer to Creditor ($350,000.00) with the debts incurred by Debtor-Spencer ($60,683.76) and the debts incurred by both Debtors ($23,633.12), Debtor-Spencer has a total of $434,316.88 in noncontingent, liquidated, and unsecured debts. Accordingly, Debtor-Spencer is ineligible to be a chapter 13 debtor. However, Debtor-Rogler does not exceed the unsecured debt limit. Therefore, the court will only dismiss Debtor-Spencer from this chapter 13 case.

8

20-60203-rk    Doc 155    FILED 11/14/20    ENTERED 11/16/20 08:35:11    Page 8 of 9

## **CONCLUSION**

The court makes no findings or conclusions regarding any of the claims, defenses, or counterclaims any party has raised or may raise in the State Court case. Today, all the court is deciding is the nature of Creditor's Claim for purposes of eligibility under § 109(e). For the reasons already stated, the Claim is noncontingent and liquidated in the amount of $350,000.00. Consequently, Debtor-Spencer is ineligible to be a chapter 13 debtor under § 109(e). The court will enter a separate order in accordance with this opinion.

**Service List**:

Christine K. Corzin
304 N Cleveland-Massillon Road
Akron, OH 44333

Robert E. Soles, Jr.
Gregory M. Friend
6545 Market Avenue North
North Canton, Ohio 44721

Dynele L Schinker-Kuharich
Office of the Chapter 13 Trustee
200 Market Avenue North, Ste. LL30
Canton, OH 44702